IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

MARY A. COX,                          )
                                      )
            Plaintiff,                )
                                      )
                                      ) Case No. CIV-20-011-KEW
                                      )
COMMISSIONER OF THE SOCIAL            )
SECURITY ADMINISTRATION,              )
                                      )
            Defendant.                )

## OPINION AND ORDER

Plaintiff Mary A. Cox (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that she was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and the case is REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of

such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 59 years old at the time of the ALJ's decision. She has a limited education and worked in the past as a bartender, sales clerk, and fry cook. Claimant alleges an inability to work beginning on October 31, 2015, due to limitations resulting from chronic obstructive pulmonary disorder (COPD), diabetes, high blood pressure, depression, hypothyroidism, gastroesophageal reflux disease (GERD), sleep apnea, and right shoulder pain.

### Procedural History

On August 25, 2017, Claimant protectively filed her applications for a period of disability and disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social

Security Act and for supplemental security income benefits pursuant to Title XVI (42 U.S.C. § 1381, *et seq*.) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On November 13, 2018, ALJ J. Leland Bentley conducted an administrative hearing from McAlester, Oklahoma. Claimant was present and testified. On February 28, 2019, the ALJ entered an unfavorable decision. Claimant requested review by the Appeals Council, and on November 13, 2019, it denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform light work, with additional limitations.

## Errors Alleged for Review

Claimant asserts the ALJ committed error by (1) reaching an improper RFC determination (with various subparts), and (2) finding she could return to her past relevant work.

## RFC Assessment

In his decision, the ALJ found Claimant suffered from severe impairments of diabetes mellitus II, right shoulder pain

4

status/post AC joint resection, COPD, hypertension, nodules on lungs, and sleep apnea. (Tr. 61). He determined Claimant could perform light work with additional limitations. She could occasionally reach overhead and was to avoid even moderate exposure to dust, fumes, odors, and poorly ventilated areas. (Tr. 63).

After consultation with a vocational expert ("VE"), the ALJ determined Claimant could return to her past relevant work as a bartender, as generally performed. (Tr. 69). As a result, the ALJ concluded Claimant was not under a disability from October 31, 2015, through the date of the decision. *Id.*

Claimant generally argues that the ALJ's RFC lacks analysis or discussion and that the ALJ only summarized the evidence without explaining how the evidence supported his conclusions. "[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." *White v. Barnhart*, 287 F.3d 903, 906 n.2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." Soc. Sec. R. 96-8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work-related activity the individual can perform based on evidence contained in the case

record. *Id*. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id*. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).

This Court agrees that the ALJ's RFC assessment relies heavily on a summary of the evidence. However, the ALJ's presentation of that evidence in his summary allows for the Court to sufficiently review his RFC determination. *See Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), quoting *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004).

Claimant next argues that the ALJ failed to fully account for her neuropathy, fatigue, dyspnea with exertion, and right shoulder pain, which she asserts supports a more restrictive RFC than that determined by the ALJ. "[I]n addition to discussing the evidence supporting his decision, the ALJ must also discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*,

79 F.3d 1007, 1010 (10th Cir. 1996) (citation omitted). He may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004), citing *Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984). However, "[w]hen the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened." *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004).

When assessing the RFC, the ALJ considered Claimant's fatigue, neuropathy, dyspnea with exertion, and right shoulder pain in his summary of the medical evidence. He noted Claimant testified her diabetes, neuropathy, and COPD were her worst problems. (Tr. 64). Regarding neuropathy, the ALJ referenced several records from Claimant's treatment providers that indicated non-compliance with diabetes treatment and that Claimant's diabetes was uncontrolled. (Tr. 64, 65, 67, 68). He specifically discussed Claimant's examination in February of 2018, where she denied burning and numbness in her feet and her examination findings were unremarkable other than her moderate obesity. However, in April of 2018, the ALJ noted Claimant complained of burning legs and feet, but her examination showed no remarkable findings other than obesity. Claimant declined treatment for neuropathy, but she indicated she would start walking or do other

7

physical activity. (Tr. 67). In September of 2018, Claimant reported bilateral foot pain/burning to heels, balls of feet, and toes for three months. Her treatment provider noted that she suffered from diabetic peripheral neuropathy associated with type II diabetes and that she was noncompliant with her medication regimen. Although her muscle strength in her bilateral lower extremities was normal, her epicritic sensation and vibratory sensation was diminished. (Tr. 68).

The ALJ also discussed Claimant's right shoulder pain. He specifically discussed Claimant's MRI of the right upper extremity from July of 2017,which showed tendinopathy and partial-thickness tear of the superior fibers of the subscapularis, tendinosis of the supraspinatus with mild bursal surface fraying, and medial subluxation of the biceps tendon secondary to subscapularis tear. He further referenced an August of 2017 x-ray of the right shoulder which showed mild degenerative changes to the acromioclavicular and glenohumeral joints, and atherosclerosis. (Tr. 66). The ALJ noted Claimant reported pain in her shoulder in February of 2018 and problems with range of motion. Upon examination, Claimant's right shoulder showed full external rotation and painful full forward flexion, strength 3/5, positive empty can test, positive impingement, and tenderness to palpation of the AC joint. (Tr. 66-67). In May of 2018, Claimant reported her shoulder was doing well. She still experienced pain, but her bilateral shoulder range of

8

motion was within normal limits. (Tr. 67). Claimant underwent right AC joint rotator cuff repair surgery in early July of 2018. By mid-month, Claimant reported zero pain and that she was taking no pain medication. (Tr. 68). At physical therapy in September of 2018, Claimant continued to rate her shoulder pain at zero. (Tr. 68).

Regarding her fatigue and dyspnea on exertion the ALJ discussed Claimant's treatment for sleep apnea and complaints of dyspnea on exertion in the decision. The ALJ discussed treatment notes from July of 2015, wherein Claimant was diagnosed with dyspnea on exertion, and her report in September of 2015 that her breathing was better. (Tr. 65). The ALJ discussed Claimant's complaints of shortness of breath in February of 2016, but with unremarkable examination findings other than obesity. *Id*. Regarding her sleep apnea, the ALJ referenced records wherein Claimant requested a sleep study. By June of 2016, Claimant reported she had sleep apnea and was using a CPAP machine. (Tr. 66).

No error is found, as the ALJ's decision demonstrates that he adequately considered Claimant's fatigue, neuropathy, dyspnea with exertion, and right shoulder pain in the RFC. The Court will not re-weigh the evidence or substitute its judgment for that of the Commissioner. *See Casias*, 933 F.2d at 800; *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

9

Claimant further argues that the ALJ failed to properly evaluate his subjective complaints. She asserts that other than making a finding that her complains were not credible, the ALJ provided no support for his conclusion.

Deference must be given to an ALJ's evaluation of Claimant's credibility, unless there is an indication the ALJ misread the medical evidence as a whole. *See Casias*, 933 F.2d at 801. Any findings by the ALJ "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). The ALJ's decision "must contain specific reasons for the weight given to the [claimant's] symptoms, be consistent with and supported by the evidence, and be clearly articulated so the [claimant] and any subsequent reviewer can assess how the [ALJ] evaluated the [claimant's] symptoms." Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *10. However, an ALJ is not required to conduct a "formalistic factor-by-factor recitation of the evidence[,]" but he must set forth the specific evidence upon which he relied. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

The ALJ noted the two-step process for considering Claimant's symptoms. He referenced certain statements by Claimant from her disability report and function report. He also briefly summarized her testimony from the hearing. The ALJ then concluded that

10

although Claimant's impairments could reasonably be expected to cause her alleged symptoms, her statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" He indicated his reasons were explained in the decision. (Tr. 64). The ALJ then summarized the medical evidence and opinion evidence. (Tr. 69). However, in his discussion of the evidence, the ALJ did not specifically identify the factors he relied upon when considering Claimant's symptoms or how he applied them to the evidence. The Court cannot review the summary of the medical evidence and perform the analysis for the ALJ. *See Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004) ("Affirming this post hoc effort to salvage the ALJ's decision would require us to overstep our institutional role and usurp essential functions committed in the first instance to the administrative process.").

On remand, the ALJ should perform a proper evaluation of Claimant's symptoms. He should then reconsider Claimant's RFC based upon his evaluation. *See Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) ("Since the purpose of the [symptom] evaluation is to help the ALJ access a claimant's RFC, the ALJ's [symptom evaluation] and RFC determinations are inherently intertwined.").

**Step Four—Past Relevant Work Analysis**

Claimant contends that the ALJ improperly performed the step-four analysis required by *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996). She asserts the ALJ failed at all three steps of the *Winfrey* analysis. Claimant also asserts that she cannot perform her past relevant work as a bartender because it requires frequent reaching.

Step four of the sequential analysis requires the ALJ evaluate a claimant's RFC, determine the physical and mental demands of a claimant's past relevant work, and then conclude whether a claimant has the ability to meet the job demands of his past relevant work using the determined RFC. *Winfrey*, 92 F.3d at 1023. The ALJ may rely upon the testimony of the VE when making the determination of the demands of a claimant's past relevant work, but "the ALJ himself must make the required findings on the record, including his own evaluation of the claimant's ability to perform his past relevant work." *Id*. at 1025; *see also Doyal v. Barnhart*, 331 F.3d 758, 761 (10th Cir. 2003). Here, because the ALJ did not properly consider Claimant's subjective complaints, he did not meet the first step of the *Winfrey* analysis, which also requires that he reconsider the other steps of the analysis on remand.

Moreover, based upon the limitation in the RFC to "occasional overhead reaching," the ALJ should also reconsider whether Claimant can perform her past relevant work. A review of the

listing for bartender in the *Dictionary of Occupational Titles* ("DOT"), DOT # 312.474-010, states that the job requires frequent reaching. The listing does not specify what type of reaching, and the VE testified that her testimony was consistent with the DOT. The ALJ did not have the VE clarify the inconsistency. *See Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999). On remand, the ALJ should clarify with the VE any potential conflicts between the testimony and the DOT.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **REVERSED** and the case is **REMANDED** for further proceedings consistent with the Opinion and Order.

IT IS SO ORDERED this 31st day of March, 2021.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE